IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

REGINA BRYANT,                              CASE NO. 1:20-cv-00726

                        Plaintiff,

            -vs-                            JUDGE PAMELA A. BARKER

DENIS MCDONOUGH, SECRETARY OF
THE UNITED STATES DEP'T OF          MEMORANDUM    OPINION    AND
VETERANS AFFAIRS                    ORDER

                        Defendants.

Currently pending is Defendant Secretary of the United States Department of Veterans Affairs Denis McDonough's ("the Secretary") Partial Motion to Dismiss Plaintiff's Amended Complaint. (Doc. No. 34.)  Plaintiff Regina Bryant ("Bryant") filed an Opposition to the Secretary's Motion on August 16, 2021, to which the Secretary replied on August 30, 2021.  (Doc. Nos. 37, 39.)  For the following reasons, the Secretary's Motion is GRANTED.

I.     Background

       A.     Facts Alleged in Amended Complaint

       Bryant is employed at the VA Hospital in Cleveland, Ohio, where she works third shift as a sterile processing technician in the Sterile Processing Department.  (Doc. No. 31, PageID# 1137, 1194.)  Bryant has worked as a sterile processing technician at the VA for at least six years.  (Id.)

       Bryant alleges throughout her Amended Complaint that she has a disability but does not identify her disability in the Amended Complaint.[1]  Bryant alleges that her disability is

---

[1] According to the VA's January 10, 2020 Final Agency Decision, Bryant has dyslexia.  (Doc. No. 37-1, PageID# 1280.) The Court will rely on the copy of the FAD attached to Bryant's Opposition.  (Doc. No. 37-1.)  In her Amended Complaint, Bryant incorporates the January 10, 2020 FAD by reference, but apparently forgot to reattach the FAD to her Amended Complaint.  (See Doc. No. 31, PageID# 1227-29.)  The Secretary noted that Bryant failed to reattach the FAD but did not

"developmental" and that it "makes it extremely difficult to learn [a] new skill quickly, especially when [she is] under a lot of pressure." (*Id.* at PageID# 1140, 1145.)

In 2017, Bryant applied for, but did not receive, a painter job in a different department within the Cleveland VA Medical Center.  (Doc. No. 31, PageID# 1228.)  When Bryant learned she was not selected for the 2017 painter job, she filed an EEO complaint, alleging that she was discriminated against when the VA failed to hire her for the painter job.  (*Id.*)  In January 2018, Bryant applied for a second painter job at the Cleveland VA Medical Center.  (*Id.*)  Bryant was also not selected for the second painter job.  (*Id.*)

On November 13, 2018, Bryant changed her work assignment from first shift in the Sterile Processing Department to third shift.  (*Id.* at PageID# 1194.)  According to Bryant, she was harassed and subjected to a hostile work environment while working first shift because she had previously filed an "EEOC case against management for allow[ing] the lead tech," Kara Deal, and her friends, including Dionna Arthur, to harass her.  (*Id.*)  Bryant alleges that she changed to third shift to avoid further contact with Deal, Arthur, and other VA employees who allegedly harassed her.  (*Id.*)  However, on January 5, 2019, Bryant learned that Arthur transferred from first to third shift.  (*Id.*)  According to Bryant, Arthur continued to harass Bryant during third shift.  (*Id.* at PageID# 1196-1213.)

---

file a copy of the FAD himself.  Instead, the Secretary relied on the FAD Bryant attached to her initial Complaint.  (*See* Doc. No. 34, PageID# 1254 n.2.)  In ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008).  Both parties rely extensively on the FAD, which is central to Bryant's claims.  The Court concludes it may consider the FAD referred to in Bryant's Amended Complaint and attached to Bryant's Opposition.

Additionally, Bryant includes several pages of allegations brought on behalf of a co-worker, Vanessa Smith.  (*Id.* at PageID# 1155-91.)  Bryant alleges that Smith is also disabled and subjected to the same harassment and hostile work environment as Bryant.  (*Id.*)  According to Bryant, the Sterile Processing Department chief, Karen Kendrick, and third shift supervisor, Choni Singleton, discriminate against Bryant and Smith based on Bryant's and Smith's disabilities.  (*Id.*)

On February 8, 2019, Bryant filed another formal EEO complaint alleging two claims: (1) that she was subjected to a hostile work environment when the VA transferred Arthur from first to third shift in January 2019, and (2) that she was discriminated against based on sex and disability when she was not selected for the second painter position on February 27, 2018.  (Doc. No. 37-1, PageID# 1279-80.)  On January 10, 2020, the VA issued its Final Agency Determination of Bryant's February 8, 2019 EEO Complaint, affirming the Office of Resolution Management's dismissal of Bryant's hostile work environment claim in its entirety, and concluding that Bryant failed to prove that the VA's rationale for hiring a different candidate for the painter position was pretext for either sex or disability discrimination.  (*Id.* at PageID# 1279-85.)

**B.**     ***Bryant I***

On September 5, 2019, Bryant, proceeding pro se, filed a complaint against the Secretary in which she alleged that she "was subjected to a Hostile Work Environment, Harassment, based on Reprisal and Negligence."  *See Bryant v. Wilkie*, No. 1:19-cv-2048-SO, Doc. No. 1, PageID# 2. Bryant alleged in *Bryant I* that she was harassed by Deal, Arthur, and other VA employees and subjected to a hostile work environment, and that the harassment intensified after she filed an EEO complaint detailing the alleged harassment by Deal and others.  *Id.*  On January 22, 2020, the *Bryant I* court concluded that Bryant failed to plausibly allege her harassment and hostile work environment

3

claims and dismissed these claims in their entirety.[2]  *See Bryant v. Wilkie*, No.: 1:19-cv-2048, 2020 WL 364224 (N.D. Ohio Jan. 22, 2020).

### C.    Procedural Background

On April 3, 2020, Bryant, proceeding pro se, filed two lawsuits against the Secretary, which the Court consolidated under the instant case number on August 28, 2020.  (*See* ECF Entry, 8/28/2020.)  The Court conducted a Case Management Conference on March 17, 2021, at which time the Court allowed Bryant additional time to amend her pleadings without leave of the Court.  (Doc. No. 29.)

Bryant filed the operative Amended Complaint on June 10, 2021.  (Doc. No. 31.)  It is somewhat difficult to discern what claims Bryant alleges on the face of Bryant's Amended Complaint.  However, on the first page of her Amended Complaint, Bryant lists five claims that she asserts are alleged therein:

> 1. Discrimination (Claim Based on Disability) Mental and Reprise
> 2. Retaliation for participation in an EEO Activity.
> 3. 10.7 Civil Right—Title VII—Hostile Work caused by Non-Immediate Supervisor or by Co-Worker (Claim Based on Negligence)
> 4. Institutionalized/Systemic Racism
> 5. Non-selection of Paint Position—Claim based on Sex (Female and Disability (Mental)

(Doc. No. 31, PageID# 1135, reproduced as in original.)

The Secretary filed a Partial Motion to Dismiss on July 15, 2021.  (Doc. No. 34.)  The Secretary asserts that Bryant also brings a claim for "violation of privacy laws" and "institutionalized

---

[2] In her *Bryant I* complaint, Bryant alleges that she was subjected to harassment and a hostile work environment "based on [r]eprisal," and also that the harassment intensified because Bryant filed an EEO complaint.  *Bryant v. Wilkie*, No. 1:19-cv-2048-SO, Doc. No. 1, PageID# 2-4.  However, the *Bryant I* court did not construe the complaint to contain a separate retaliation claim under the Americans with Disabilities Act.  *See Bryant*, 2020 WL 364224, at *1 ("Plaintiff claims Deal and her coworkers created a hostile work environment by their harassment.").

racism" in addition to the claims Bryant lists at the beginning of her Amended Complaint.  (*Id.* at PageID# 1252.)  The Secretary seeks dismissal of all of Bryant's claims, except her non-selection based on sex and disability discrimination claim.  (*Id.* at PageID# 1252.)  Bryant filed an Opposition to the Secretary's Motion on August 16, 2021, to which the Secretary replied on August 30, 2021.  (Doc. Nos. 37, 39.)  The Secretary's Motion is now ripe for a decision.

## II.     Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff.  *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555-56, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Deciding whether a complaint

states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

## III.    Analysis

As an initial matter, the Court observes that Bryant's claims are difficult to discern and do not fully align with the claims that the Secretary believes Bryant asserts. (*Compare* Doc. No. 31, PageID# 1135 *with* Doc. No. 34-1, PageID# 1251-52.) Liberally construing Bryant's pro se Amended Complaint, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), the Court construes Bryant's Amended Complaint to set forth the following claims:

> (1) Disability discrimination against Bryant and her co-worker Vanessa Smith by Karen Kendrick and Choni Singleton (Doc. No. 31, PageID# 1136-91);
> (2) Retaliation for engaging in an EEO activity (*Id.* at PageID# 1193-1213);
> (3) Hostile work environment and harassment on the basis of disability (*Id.* at PageID# 1193-1215);
> (4) Institutionalized racism (*Id.* at PageID# 1215-19, 1230-31);
> (5) Violation of privacy laws (*Id.* at PageID# 1220-21);
> (6) Non-selection for painter position due to discrimination based on sex and disability (*Id.* at PageID# 1147); and

6

(7) Non-selection for painter position due to retaliation for filing an EEOC complaint (*Id.* at PageID# 1147, 1229).

The Secretary does not move to dismiss Bryant's sixth claim, non-selection for painter position due to discrimination based on sex and disability.  (Doc. No. 34-1, PageID# 1256.) Accordingly, this claim is not dismissed.

### A.    Disability Discrimination Against Bryant and Her Co-Worker Vanessa Smith By Karen Kendrick and Choni Singleton

Bryant alleges that she and her coworker Vanessa Smith were discriminated against by the chief of the Sterile Processing Department Karen Kendrick and the third shift supervisor Choni Singleton because both Bryant and Smith are disabled.  (Doc. No. 31, PageID# 1137.)  The Secretary moves to either dismiss all claims that Bryant asserts on Smith's behalf under Fed. R. Civ. P. 12(b)(6) or else strike all claims asserted on Smith's behalf as immaterial under Fed. R. Civ. P. 12(f).

The Americans with Disabilities Act prohibits discrimination against a "qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  In order to maintain "an action for a hostile work environment under the ADA, the employee must demonstrate that: (1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures."  *Trepka v. Board of Educ.*, 28 Fed. App'x 455, 461 (6th Cir. 2002) (internal citations omitted); *see also Sessin v. Thistledown Racetrack, LLC*, 187 F. Supp. 3d 869, 877 (N.D. Ohio 2016).  A plaintiff seeking relief under the ADA "must file suit within 90 days of receiving a right-to-sue letter from the EEOC."  *Mayers v. Sedgwick Claims Mgmt. Servs., Inc.*, 101 F. App'x 591, 593 (6th Cir. 2004).  An employee's "[f]ailure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII or ADA action."  *Id.* (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d

435 (1990)).  Thus, exhaustion of administrative remedies is a condition precedent to an ADA action. *Id.* (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000).  *See also Hobson v. Mattis*, No. 18-5306, 2018 WL 7890771, at *3 (6th Cir. 2018) (affirming district court's dismissal of federal employee's ADA claim).

The Court concludes that Bryant's claim of disability discrimination against herself and Smith by Kendrick and Singleton fails for two reasons.  First, Bryant impermissibly attempts to bring this claim on Smith's behalf.  Bryant is clear that she seeks relief on her own behalf, as well as on behalf of Smith, who is not a party to this action: "The plaintiff believe[s] that both her co-worker Vanessa Smith and she have been discriminat[ed] against by Chief of Sterile Processing Department (Karen Kendrick) and the third shift Supervisor (Choni Singelton)."  (Doc. No. 31, PageID# 1137.)  Bryant includes several pages' worth of allegations regarding alleged discrimination against either Bryant or Smith, or both.  (*See id.*, PageID# 1136-54.)  Bryant also includes 35 pages of allegations that pertain exclusively to Smith, titled "Vanessa Smith's Experiences of Working In a Hostile Work Environment on Third Shift Sterile Processing Department."  (*Id.* at PageID# 1157-91.)  The Secretary's argument that Bryant may not assert claims on behalf of a non-party is well-taken.  Smith is not a party to the instant lawsuit and Bryant is not entitled to relief on Smith's behalf.  (Doc. No. 34-1, PageID# 1263.)

Second, to the extent that Bryant brings this claim solely on her own behalf, the Court concludes that it also fails because Bryant did not exhaust her administrative remedies with respect to this claim.  When a plaintiff "files suit prior to receiving the right to sue letter, the district court is compelled to dismiss the premature action for failure to exhaust administrative remedies."  *Mitchell v. Chapman*, 343 F.3d 811, 820 n. 10 (6th Cir. 2003).  *See also Upperman v. Southwest Airlines Co.*,

No.: 2:17-cv-00348, 2018 WL 527376, at *3 (S.D. Ohio Jan. 24, 2018).  Bryant does not allege that

she ever filed a claim with the VA's Office of Resolution Management for disability discrimination

by Kendrick and Singleton, nor that she received a final adverse agency adjudication and right-to-sue

letter from any agency.  Accordingly, Bryant's claim for disability discrimination against herself and

Smith by Kendrick and Singleton is dismissed for failure to state a claim under Fed. R. Civ. P.

12(b)(6).[3]

### B.      Retaliation for Engaging in an EEO Activity

Next, Bryant alleges that she was retaliated against for filing an "EEOC case against

management for allow[ing] the lead tech[nician Kara Deal] and her [clique] of friend[s] to harass

me." (Doc. No. 31, PageID# 1194.)  Bryant directs the Court to "refer to case no (1:19 CV 2048) for

more information on [her] EEOC case with former le[a]d tech Kara Deal."  (*Id.* at PageID# 1196.)

In *Bryant I*, the court dismissed Bryant's harassment and hostile work environment claims in their

entirety.[4]  *See Bryant*, 2020 WL 364224, at *3.  The Court concludes that Bryant's retaliation for

engaging in an EEO activity claim is barred by res judicata.

The doctrine of res judicata promotes judicial economy and protects litigants from the burden

of relitigating claims and issues with the same parties.  *Parklane Hosiery Co v. Shore*, 439 U.S. 322,

326 (1979).  *See also Martin v. Dana Driveshaft Manufacturing, L.L.C.*, No. 3:09-CV-793, 2010 WL

---

[3] The *Mitchell* court observed in the same footnote that it "is well-settled that the ninety day right to sue provision is an administrative condition precedent, rather than a jurisdictional prerequisite."  *Mitchell*, 343 F.3d at 820 n. 10, citing *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 646 (6th Cir. 1998).  Therefore, the Secretary's arguments throughout his Motion that Bryant's claims should be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) are not well-taken. Rather, Bryant's failure to administratively exhaust many of her claims is cause for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  *Truitt*, 148 F.3d at 646-47.
[4] Though the *Bryant I* court construed Bryant's complaint to only state claims for harassment and hostile work environment, it appears that Bryant may also have intended—but failed to correctly plead—a claim for retaliation.  In her *Bryant I* complaint, Bryant claims to seek damages for a "hostile work environment, harassment, *reprisal*, and negligence…."  *See Bryant v. Wilkie*, No. 1:19-cv-2048-SO, Doc. No. 1, PageID# 2.

9

3515597 at *2 (N.D. Ohio Sept. 2, 2010); *Baker v. Bryant & Stratton College*, No. 1:21-cv-00623, 2021 WL 1909790, at *3 (N.D. Ohio May 12, 2021).

Res judicata is "the preclusive effect of a judgment" and encompasses claim preclusion and issue preclusion. *Taylor v. Sturgell*, 553 U.S. 880, 892, (2008). Under claim preclusion, "a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.*, quoting *New Hampshire v. Maine*, 532 U.S. 742, 748, (2001). Issue preclusion, however, "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892, 128 S.Ct. 2161, quoting *New Hampshire*, 532 U.S. at 748-49.

Under federal law, res judicata applies when "(1) there is a final decision on the merits of the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or that should have been litigated in the first action; and (4) there is identity of claims." *Baker*, 2021 WL 1909790, at *3, citing *Rawe v. Liberty Mut. Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006); *Hamilton's Bogarts, Inc., v. Michigan*, 501 F.3d 644, 650 n. 4 (6th Cir. 2007); *Walker v. General Telephone Co.*, 25 Fed. App'x 332, 336 (6th Cir. 2001) (citations omitted).

With respect to the third element, "the Sixth Circuit has stated that res judicata requires that if an action is dismissed on the merits, the judgment operates as an absolute bar to any subsequent action between the same parties concerning 'every matter that was actually litigated in the first case *as well as every other ground of recovery that might have been presented*.'" *Id.*, quoting *Walker*, 25 Fed. App'x at 336 (citations omitted) (emphasis added). With respect to the fourth element, "identity

10

of claims" means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). Where the two causes of action arise from the same transaction or series of transactions, "the plaintiff should have litigated both causes in the first action and may not litigate the second issue later." *Baker*, 2021 WL 1909790, at \*3, citing *Rawe*, 462 F.3d at 529.

The Court concludes that all four elements of res judicata are satisfied. First, in *Bryant I*, another court in this district dismissed Bryant's complaint for failing to state a plausible claim under the ADA. *Bryant*, 2020 WL 364224, at \*3. Such a dismissal operates as a final adjudication on the merits for res judicata purposes. *Cobbs v. Katona*, 8 Fed. App'x 437, 438 (6th Cir. 2001) ("A prior Fed.R.Civ.P. 12(b)(6) dismissal for failure to state a claim upon which relief may be granted operates as an adjudication on the merits for issue and claim preclusion purposes."), citing *Rogers v. Stratton Indus., Inc.*, 798 F. 2d 913, 917 (6th Cir. 1986). Second, this action involves the same parties as *Bryant I*: Bryant and the Secretary of the Department of Veterans Affairs. Finally, Bryant's instant claim of retaliation for engaging in an EEO activity arises from the same series of transactions—i.e., the alleged hostile work environment Bryant endured in retaliation for filing an EEOC complaint about Deal and Arthur—as in *Bryant I* and therefore should have been litigated in the first action.

The Court is not persuaded by Bryant's argument that her Amended Complaint refers to a different EEOC claim about Arthur's alleged harassment, rather than the EEOC claim at issue in *Bryant I*. (Doc. No. 37, PageID# 1272.) In her Amended Complaint, Bryant clearly alleges that Arthur was "angry" because Bryant "filed a complaint [against] Mrs. Deal" and because Arthur's name "came up in [Bryant's] complaint multiple time[s]." (Doc. No. 31, PageID# 1195.) Further, Bryant directs the Court to refer to *Bryant I* "for more information on [her] EEOC case with former

11

le[a]d tech Kara Deal," further demonstrating the interrelated nature between this retaliation claim and the hostile work environment and harassment claims at issue in her prior lawsuit. (*Id.* at PageID# 1196.)

It is clear from the face of her Amended Complaint that Bryant alleges that the alleged retaliation stemmed from Bryant's EEOC complaint about Deal and Arthur. (*Id.*)  This is the same "series of transactions" at issue in *Bryant I*. *See Baker*, 2021 WL 1909790, at *4.  Bryant's "new" retaliation claim could have been presented in *Bryant I*. *Id.*  Thus, the third and fourth elements of res judicata are satisfied.  Bryant's claim for Retaliation for Engaging in an EEO Activity is dismissed.

### C.      Hostile Work Environment and Harassment on Basis of Disability

Bryant alleges that she was subjected to a hostile work environment at the VA and harassed by her VA coworkers because she is disabled.  (Doc. No. 31, PageID# 1193-1213.)  The Secretary moves to dismiss this claim pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

As an initial matter, the Court concludes that part of Bryant's hostile work environment and harassment claim are barred by issue preclusion.  The doctrine bars repetitive litigation of the same issue between the same parties: if two parties actually litigated an issue in a prior case, and a court necessarily decided the issue pursuant to entry of a final judgment, then the losing party cannot relitigate the issue against the winner in a later case." *Amos v. PPG Industries, Inc*., 699 F.3d 448, 451 (6th Cir. 2012) (citing *Taylor*, 553 U.S. at 892.)  *See also Covenant Medical Center, Inc. v. Burwell*, 603 Fed. Appx. 360, 363 (6th Cir. 2015). For the doctrine to apply the loser must have had a "full and fair opportunity" to litigate the issue in the prior case.  *Id*. (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)).  *See also B&B Hardware, Inc. v. Hargis Industries, Inc*. 575

12

U.S. 138 (2015) ("This Court has long recognized that 'the determination of a question directly involved in one action is conclusive as to that question in a second suit.'") (quoting *Cromwell v. County of Sac,* 94 U.S. 351, 354 (1877)).

In paragraphs 179-200 of her Amended Complaint, Bryant alleges that she filed an EEOC complaint about Deal and Arthur and, as a result, they and other VA coworkers harassed Bryant and subjected her to a hostile work environment. (Doc. No. 31, PageID# 1193-95.) In *Bryant I*, Bryant alleged identical hostile work environment and harassment claims, which the court dismissed in their entirety. *Bryant*, 2020 WL 364224, at *3. Thus, the Court concludes that Bryant is barred from relitigating her hostile work environment and harassment claims to the extent the claim stems from the EEOC claim Bryant filed against Deal.

Bryant next alleges that she was subjected to a hostile work environment and harassment based on her disability because Arthur was transferred to third shift with Bryant, even though VA management was aware that Bryant and Arthur clashed repeatedly while working together on first shift. (Doc. No. 31, PageID# 1196.) In her formal February 8, 2019 EEO complaint to the VA's Office of Resolution Management, Bryant complained that she was subjected to a hostile work environment when Arthur was transferred to third shift with Bryant on January 5, 2019. (Doc. No. 37-1, PageID# 1278.) The ORM dismissed Bryant's hostile work environment claim in its entirety because it concluded that Bryant's claim did not rise to the level of severe and pervasive conduct and therefore failed to state a claim. (*Id.* at PageID# 1279.) In its FAD, the VA's Office of Employment Discrimination Complaint Adjudication affirmed the ORM's dismissal of Bryant's hostile work environment claim. (*Id.* at PageID# 1280.) Thus, Bryant's hostile work environment and harassment

13

claim, as alleged in her February 8, 2019 EEO complaint, is fully exhausted and properly before this Court.

However, in her Amended Complaint, Bryant also includes several pages' worth of allegations that she did not administratively exhaust before alleging them here, as all of the allegations are dated well after she filed her February 8, 2019 EEO complaint.  These allegations include that on October 13, 2019, Arthur spoke rudely to her while they were preparing Stryker Triathlon trays; that throughout September and October 2019, Bryant was "silently monitored" by her shift supervisor; that on November 28, 2019, Bryant suspected that Arthur left a piece of hair as an act of sabotage on a tray that Bryant was working on; that on December 10, 2019, Arthur "went out of her way" to sit near Bryant and that someone sabotaged a load of instruments that Bryant attempted to sterilize in the autoclave; and that at some point between December 31, 2019 and January 5, 2020, someone sabotaged Bryant's Sterrad paperwork and autoclave records.  (Doc. No. 31, PageID# 1196-1213.)

To the extent that Bryant attempts to assert a hostile work environment and harassment claim based on allegations related to events that took place between September 2019 and January 2020, such a claim has not been administratively exhausted and is therefore dismissed.  *See supra*, Section III.A., discussing administrative exhaustion.  Bryant does not allege that she ever amended her February 8, 2019 EEO complaint, nor that she ever filed a new EEO complaint, to include any of these allegations.  Further, Bryant does not allege that she ever obtained a right to sue letter regarding these allegations related to Arthur's conduct between September 2019 and January 2020.  Therefore, Bryant's hostile work environment and harassment claim, to the extent it is premised upon the conduct alleged to have occurred between September 2019 and January 2020, is dismissed.  *See Mitchell*, 343 F.3d at 820 n. 10.

14

Thus, the only portion of Bryant's hostile work environment and harassment claim that is properly before this Court is Bryant's bare assertion that Arthur's transfer to third shift subjected Bryant to a hostile work environment and harassment.  To prevail on a hostile work environment claim under the ADA, "the employee must show conduct that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and [to] create an abusive working environment.'" *Trepka*, 28 Fed. App'x. at 461, quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  However, "[c]onduct that is 'merely offensive' will not suffice to support a hostile work environment action." *Id.*  The Court concludes that Bryant's assertion that Arthur's transfer to third shift subjected Bryant to a hostile work environment and harassment is insufficient to state a claim and must be dismissed under Fed. R. Civ. P. 12(b)(6).  A single event—i.e., the transfer of Arthur to third shift—does not demonstrate a pattern of severe and pervasive conduct that alters the conditions of the plaintiff's employment and creates an abusive working environment.  Accordingly, Bryant's hostile work environment and harassment claim is dismissed.

### D.    Institutionalized Racism

Next, Bryant alleges that the reason her complaints against the VA have not yet been resolved and the reason that she was not selected for the second painter position is because of institutional racism.   (Doc. No. 31, PageID# 1215, 1226.)   The Secretary moves to dismiss Bryant's institutionalized racism claim.  (Doc. No. 34-1, PageID# 1262.)  The Court concludes that Bryant's claim for institutionalized racism should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Bryant's Amended Complaint never rises above the speculative level.  Although Bryant need not plead a discrimination claim with heightened specificity, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-14 (2002), Bryant must still meet basic pleading requirements by providing "enough

facts to state a claim to relief that is plausible on its face" and, thus, fails to meet basic pleading requirements.  *Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 678.  Bryant's Amended Complaint must contain enough facts to "'raise the right to relief above the speculative level on the assumption that all the allegation in the complaint are true.'" *New Albany Tractor v. Lousiville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011), quoting *Twombly*, 550 U.S. at 555.  Further, the Court "need not accept as true legal conclusions or unwarranted factual inferences."  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  In her Amended Complaint, Bryant alleges that she is the victim of institutionalized racism because she is an African American woman, but pleads no facts that suggest that her race was a factor in any decision made by the VA.  For example, Bryant alleges that the VA management sought to provoke a physical altercation between herself and Arthur so that the VA would have a reason to terminate Bryant's and Arthur's employments, and thus rid itself of Bryant's various complaints.  (Doc. No. 31, PageID# 1216.)  According to Bryant, "[t]hat is why this case is [an] example of [i]nstitutionalize[d] racism."  (*Id.*)  However, Bryant never mentions race nor explains how race affected the VA's decision to allow Arthur to transfer to third shift.  (*Id.*)  The Court is not obligated to accept Bryant's unsupported legal conclusion, that she is the victim of institutionalized racism, as true when Bryant has not pleaded any facts to render the conclusion plausible.  *See Morgan*, 829 F.2d at 12.

Moreover, although Bryant alleges that institutionalized racism was "the real reason" she was not selected for the paint job, Bryant does not allege any facts that plausibly suggest that she was passed over for the paint job due to her race.  (*See* Doc. No. 31, PageID# 1226-31.)  Instead, Bryant pleads questions rather than facts to support her legal conclusion that she was not selected for the second paint job because of her race.  (*Id.*)  In her Amended Complaint, Bryant alleges that the EEO

16

investigator "chose to conduct her investigation into the non-selection of the first paint position at the exact same time [Bryant] was interview[ing] for the second paint job." (*Id.* at PageID# 1230.)  Bryant then asks "[w]hat was going through the minds of the two interview[er]s when they were forced to interview a candidate who had filed a complaint against them for the non-selection of the first paint job?" (*Id.*)  Bryant also asks whether "the Equal Employment Opportunity office at the V.A[.] [M]edical [C]enter of Cleveland [is] a [n]eutral [o]rganization?" and asserts that the "question here is [whether] the V.A[.] [is] practicing Systemic Racism when hiring in the Engineering Department." (*Id.* at PageID# 1231.)  Bryant's questions are plainly insufficient to support a claim that she was not selected for the second painter position due to institutionalized racism.

Additionally, the Court also concludes that Bryant abandoned her institutionalized racism claim when she failed to address the Secretary's arguments in her Opposition.  (*See* Doc. No. 37.) *See Weatherby v. Fed. Express*, 454 Fed. Appx. 480, 490 (6th Cir. 2012) (noting that "[t]hough this court provides some leeway to *pro se* litigants, Plaintiff must ... make some effort at argumentation or presentation of facts" and absent such effort, plaintiff's claims are deemed waived); *Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived); *Scott v. State of Tennessee*, 1989 WL 72470 at *2 (6th Cir.1989) (noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion [to dismiss], then the district court may deem the plaintiff to have waived opposition to the motion.").  *See also Selou v. Integrity Solution Services, Inc.*, 2016 WL 612756 at * 3 (E.D. Mich. Feb. 16, 2016) ("Plaintiff's failure to address any claim but her TCPA claim in response to LiveVox's motion to dismiss is cause for dismissing those claims."); *Ullmo v. Ohio Turnpike*, 126 F.Supp.3d

910, 919 (N.D. Ohio 2015) (finding that plaintiff abandoned claim where he failed to respond to defendant's motion to dismiss); *Dykema Excavators, Inc. v.  Blue Cross of Blue Shield of Michigan*, 77 F.Supp.3d 646, 659 (E.D. Mich. 2015) ("[T]hese claims are subject to dismissal because the plaintiffs do not address or even mention them in their response to the motion to dismiss, and it appears that they therefore have abandoned them and now intend to make no effort to proceed upon them."; *Viola v. Ohio Attorney Gen., et al.*, 1:20-cv-00765, 2021 WL 510746, at *23 (N.D. Ohio 2021) ("Based upon Viola's complete failure to respond to any of these arguments, Viola is deemed to have abandoned and/or waived his claim . . . ."). Thus, the Court concludes that Bryant's abandonment of her institutionalized racism claim in her Opposition is an additional ground for dismissal of the claim.  Bryant's claim for institutionalized racism is dismissed.

### E. Violation of Privacy Laws

Bryant also alleges that the "privacy laws have been broken in this case," although she does not identify any specific privacy laws that she believes have been violated.  (Doc. No. 31, PageID# 1220.)  However, Bryant alleges that a coworker asked if she "had a federal case going on downtown in the courthouse, against the VA [M]edical [C]enter."  (Doc. No. 31, PageID# 1220.)  Bryant claims that she "was totally shocked by this" because "there is absolutely no way she or anyone else in [Bryant's] department should know anything about this case."  (*Id.*)  Bryant further alleges that she believes that Kara Deal, who Bryant previously accused of harassment, will be able to view Bryant's payroll and personal information because Deal now works in the payroll department.  (*Id.* at PageID# 1221.)  The Secretary moves to dismiss Bryant's privacy violation claim.  (Doc. No. 34, PageID# 1262.)  The Court agrees that Bryant has failed to state a claim for privacy violation and dismisses the claim.

18

As an initial matter, Bryant's claim that the "privacy laws" were broken in this case because a coworker knew of the existence of this federal lawsuit is meritless.  Federal lawsuits are not confidential.  Indeed, there is a "strong presumption in favor of openness as to court records."  *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich*., 825 F.3d 299, 305 (6th Cir. 2016).  Bryant does not allege that this case was filed under seal.  Bryant's lawsuit against the Secretary is a matter of public record and the public may access this case's docket at any time.

Moreover, Bryant's privacy law violation claim never rises above the speculative level.  As discussed above, Bryant is obligated to provide "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 57; *Iqbal*, 556 U.S. at 678.  Here, Bryant alleges only legal conclusions and unwarranted factual inferences with respect to her privacy violation claim.  She alleges that Deal, who now works in the VA's payroll department, has access to Bryant's payroll information.  (Doc. No. 31, PageID# 1221.)  Bryant alleges that she is suspicious that Deal might use Bryant's information to retaliate against her but does not allege that Deal ever attempted to do so.  Bryant also alleges that "people are able to go into [her] file anytime they [want]," and that, "because [Bryant] is an African America, all the rules and laws about privacy seem not to matter when it comes to [her]."  (*Id.*)  Bryant alleges no facts that plausibly suggest that her payroll or other personal information is widely accessible to, or has been accessed by, her coworkers at the VA.  Bryant alleges only legal conclusions that privacy laws "seem not to" apply to Bryant because of her race.  The Court is not obligated to accept such legal conclusions as true.  *Morgan*, 829 F.2d at 12.  Bryant's privacy law violation claim is dismissed.[5]

---

[5] Moreover, the Court concludes that Bryant abandoned any privacy violation claim when she failed to address the Secretary's arguments in favor of dismissal of the privacy claims in her Opposition.  *See supra*.

19

**F.       Non-selection for Painter Position Due to Retaliation for Filing EEOC complaint**

Finally, Bryant alleges that she was not selected for the second painter position due to retaliation for filing a previous EEOC complaint when the VA failed to hire Bryant for a previous painter position.  (Doc. No. 31, PageID# 1227-29.)  The Secretary argues that this claim should be dismissed because it is not yet administratively exhausted.  (Doc. No. 34-1, PageID# 1259.)  The Court agrees that Bryant's non-selection due to retaliation claim should be dismissed.

In her February 8, 2019 EEOC complaint filed with the VA's Office of Resolution Management, Bryant claimed that she was "discriminated against based on sex (female) and disability (mental: Dyslexia) when, on February 27, 2018, she was not selected for the position of Painter . . . ." (Doc. No. 37-1, PageID# 1280.)  Bryant's February 8, 2019 EEOC complaint did not include a retaliation claim.  Bryant does not allege that she ever attempted to amend her February 8, 2019 EEOC complaint to include a retaliation claim, nor does she allege that she filed a different EEOC complaint in which she alleges that she was not selected for the second painter position due to retaliation for filing a previous EEOC complaint.  Bryant knew of the circumstances surrounding her non-selection for the second painter position—especially given that Bryant filed her EEOC complaint nearly a year after she was not selected for the second painter position—but never brought any retaliation claim in her administrative proceedings.  Thus, the Court concludes that Bryant has failed to exhaust her administrative remedies with respect to this claim.  Bryant's non-selection due to retaliation claim is dismissed.

**IV.**     **Conclusion**

For the reasons set forth above, the Secretary's Partial Motion to Dismiss is GRANTED.

**IT IS SO ORDERED.**

                         *s/Pamela A. Barker*
                         PAMELA A. BARKER
Date:  November 17, 2021             U. S. DISTRICT JUDGE