## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

REGINA BRYANT,
**CASE NO. 1:20-cv-00726**

**Plaintiff,**

-vs-
**JUDGE PAMELA A. BARKER**

DENIS MCDONOUGH, SECRETARY OF THE UNITED STATES DEP'T OF VETERANS AFFAIRS
**MEMORANDUM OPINION AND ORDER**

**Defendants.**

Currently pending is Defendant Secretary of the United States Department of Veterans Affairs Denis McDonough's ("the Secretary") Motion for Summary Judgment, filed on April 15, 2022.  (Doc. No. 45.)  Plaintiff Regina Bryant filed an Opposition to the Secretary's Motion on May 11, 2022, to which the Secretary replied on May 25, 2022.  (Doc. Nos. 48, 49.)  Additionally, the Secretary also filed a Motion to Exclude Hearsay Documents from Plaintiff's Opposition Brief to Summary Judgment on May 25, 2022.  (Doc. No. 50.)  Bryant did not file an opposition to the Secretary's Motion to Exclude Hearsay Documents.

Also pending is Bryant's Motion for Reconsideration Based on New Evidence, filed on April 22, 2022.  (Doc. No. 46.)  The Secretary filed an Opposition to Bryant's Motion for Reconsideration on May 6, 2022.  (Doc. No. 47.)

For the following reasons, the Secretary's Motion for Summary Judgment is granted.  The Secretary's Motion to Exclude Hearsay Documents is granted. Bryant's Motion for Reconsideration is denied.

## I.     Background

### A.     Factual Background

Plaintiff Regina Bryant works as a Medical Supply Technician within the Sterile Processing Service at the Louis Stokes VA Medical Center in Cleveland, Ohio ("the VA").  (Final Agency Decision, Doc. No. 45-6, PageID# 1547.)  Bryant had worked in that position for at least 5 years prior to 2019.  (*Id.*)  Bryant has a "Schedule A disability," specifically dyslexia, as recognized by the VA.[1] (Bryant Depo., Doc. No. 45-4, PageID# 1527.)  Bryant also represents in her filings that she has been diagnosed with autism spectrum disorder, attention deficit hyperactivity disorder, and other problems with her working memory, although she does not indicate whether the VA is aware of these disabilities.  (Doc. No. 48, PageID# 1698.)  There is no evidence to suggest that, at the time of the events described below, Bryant notified the VA, or the VA was aware of, Bryant's additional diagnoses of autism, ADHD, and other working memory problems.  (*See* Doc. No. 45-6, PageID# 1547, noting that Bryant's disability discrimination claim was based on her allegation that the VA discriminated against her because of her dyslexia.)

In January 2018, the VA announced job posting WG-4102-09, for an open painter position within the VA's Paint Shop, a division of the VA's Engineering Department.  (Oden Decl., Doc. No. 45-2, ¶ 2.)  According to Darrel Oden, the Paint Shop Supervisor, the Paint Shop sought to hire a candidate with "significant experience in commercial painting" and who would require "minimal supervision."  (*Id.*)  According to Oden, a commercial painter in a healthcare setting must possess technical skills and awareness of how to work with chemical and paint applications in a clinical

---

[1] "Schedule A" refers to a special appointing authority that federal agencies may use to non-competitively hire candidates with certain recognized, demonstrated severe physical, psychiatric, and/or intellectual disabilities.  *See* 5 C.F.R. § 213.3102(u).

2

environment accessible to patients, medical staff, and employees.  (*Id.*)  The VA's HR department specifically invited candidates with Schedule A disabilities to apply to the painter position.  (*Id.* at ¶ 3; Tiedt Decl., Doc. No. 45-3, ¶ 4; Doc. No. 45-4, PageID# 1529-30.)  According to Bryant, candidates with Schedule A disabilities received at least a one-point preference in the selection process for the painter position.  (Doc. No. 45-4, PageID# 1530.)

Bryant applied for the WG-4102-09 open painter position.  (*Id.* at PageID# 1529-30.)  No one within Bryant's supervisory chain in the Sterile Processing Department was involved in the selection process for the painter position.  (Doc. No. 45-6, PageID# 1547.)  The VA's HR department and a "subject matter expert," who is not identified in the record, conducted an initial review of the applications for the painter position.  (Doc. No. 45-2, ¶ 3.)  The subject matter expert selected five applicants, including Bryant, to move to the final interview phase of the application process.  (*Id.*; Doc. No. 45-6, PageID# 1547.)  The subject matter expert was not permitted to communicate with the interviewers about the position or the preferred characteristics of the ideal painter position candidate.  (Doc. No. 45-2, ¶ 3.)  At the time of Bryant's interview in early 2018, the Engineering Department employed two female employees, including one female employee who had worked in the Paint Shop for 20 years.  (Doc. No. 45-2, ¶ 9; Doc. No. 45-3, ¶ 9.)  Additionally, at that time, the Paint Shop employed at least five employees with recognized disabilities.  (*Id.*)

Oden and Clifford Tiedt, the Machine Shop Supervisor within the VA's Engineering Department, interviewed all five candidates.[2]  According to Oden, he did not know Bryant until they met during her 2018 interview for the painter position.  (Doc. No. 45-2, ¶ 5.)  Oden and Tiedt asked all interviewees the same 11 questions.  (*Id.* at ¶ 4; Doc. No. 45-3, ¶ 5.)  Each question was scored on

_____

[2] Though five candidates applied, one withdrew from consideration following his interview.  Thus, Bryant competed against three other final candidates.  (Doc. No. 45-3, PageID# 1512.)

a point scale of 1 to 5,with 1 point indicating little to no knowledge of the question, 3 points indicating normal knowledge of the question, and 5 points indicating excellent knowledge of the question.  (Doc. No. 45-2, PageID# 1496.)  Oden and Tiedt asked the candidates a series of "technical knowledge questions," designed to determine a candidate's knowledge about commercial painting in a hospital setting.  (*Id.* at PageID# 1496-98.)  For example, they asked candidates to explain how to wood grain a metal door in detail, to explain what "VOCs" in paint were, to list the five types of paint used within a hospital setting due to its closed environment, and to explain what "picture framing" meant in the context of commercial painting.  (*Id.*)

At the beginning of Bryant's interview, she volunteered that she was disabled, that she was not a veteran, and that she was not a "journeyman" painter.  (Doc. No. 45-4, PageID# 1531.)  During her interview, she did not know how to answer the question about how to wood grain a metal door. Both Oden and Tiedt gave her response to that question a score of 1.  (Doc. Nos. 45-2, PageID# 1498; 45-3, PageID# 1516.)  Bryant also could not explain what "VOCs" were and earned 1 point from both Oden and Tiedt.  (*Id.*)  Bryant also only named 2 of the 5 types of paint used within a hospital setting and earned a 2 from both Oden and Tiedt.  (*Id.*)  Bryant was able to successfully identify the 3 abilities of primer and earned a score of 5 from Oden and a 4 from Tiedt.  (*Id.*)  However, she was unable to explain what picture framing meant in the context of commercial painting and earned 1 point from both Oden and Tiedt.  (*Id.*)  Additionally, Bryant had little to no prior experience in commercial painting.  (Doc. No. 45-4, PageID# 1532-35; Second Bryant Depo., Doc. No. 45-5, PageID# 1540-41.)  Bryant admitted that she had done some commercial painting in law offices but had not done any painting inside hospitals.  (*Id.*)  Rather, nearly all of Bryant's painting experience was limited to residential settings, like priming and painting houses on Habitat for Humanity projects.

(*See* Bryant's Paint Portfolio, Doc. No. 48-2, PageID# 1756.)  Altogether, Bryant scored a total of 55 points.  (Doc. No. 45-2, PageID# 1497.)  Bryant received the lowest score of the final four applicants.  (*Id.*)

Conversely, the Selected Candidate[3] earned 77 points on his application (hereinafter the "Selected Candidate").  (*Id.*)  According to Oden's and Tiedt's notes from the Selected Candidate's interview, he successfully answered all of the technical knowledge questions, including about how to wood grain a metal door, what VOCs were, the 5 types of paint used in hospital settings, and picture framing.  (Doc. Nos. 45-2, PageID# 1502-04; 45-3, PageID# 1522-24.)  Like Bryant, the Selected Candidate also has a Schedule A disability.  (Doc. No. 45-2, ¶ 7; Doc. No. 45-3, ¶ 7; Doc. 45-4, PageID# 1528.)  Additionally, the Selected Candidate had experience as a painter in a commercial setting.  (Doc. No. 45-2, ¶ 7; Doc. No. 45-3, ¶ 7.)  As the highest-scoring candidate, the Selected Candidate was offered, and accepted, the open painter position.  (Doc. No. 45-2, PageID# 1495.)

After she was not selected for the 2018 painter position, Bryant filed an EEO Complaint on February 8, 2019.  (Doc. No. 45-6, PageID# 1545-47.)  Therein, she alleged that the VA discriminated against her based on her disability (dyslexia) and gender (female) when she was not selected for the painter position.  (*Id.*)  The VA's Office of Resolution Management ("ORM") conducted a partial investigation into Bryant's allegations in early 2019.[4]  On July 10, 2019, the VA notified Bryant that she could either request a hearing and decision on her non-selection claims by an EEOC judge or an immediate final decision without a hearing.  (*Id.*)  Bryant responded that she wanted a final decision by the VA.  (*Id.*)  On January 10, 2020, the VA issued its Final Agency Decision, in which it

---

[3] The Secretary does not identify the Selected Candidate by name, as he is a current employee with a recognized disability.
[4] The Office of Resolution Management previously summarily dismissed a hostile work environment claim that Bryant brought in addition to her non-selection claims.  The ORM only investigated Bryant's non-selection claims. (Doc. No. 45-6, PageID# 1546.)

concluded that the VA did not discriminate against Bryant on either the basis of disability or gender when she was not selected for the painter position in 2018.  (*Id.* at PageID# 1550-52.)

## B.    Procedural History

On April 3, 2020, Bryant, proceeding pro se, filed two lawsuits against the Secretary, which the Court consolidated under the instant case number on August 28, 2020.  (*See* ECF Entry, 8/28/2020.)  Bryant filed the operative Amended Complaint on June 10, 2021.  (Doc. No. 31.) Though it was difficult to discern Bryant's claims in her Amended Complaint, the Court construed Bryant's Amended Complaint as setting forth the following claims:

> (1) Disability discrimination against Bryant and her co-worker Vanessa Smith by Karen Kendrick and Choni Singleton (Doc. No. 31, PageID# 1136-91);
> (2) Retaliation for engaging in an EEO activity (*Id.* at PageID# 1193-1213);
> (3) Hostile work environment and harassment on the basis of disability (*Id.* at PageID# 1193-1215);
> (4) Institutionalized racism (*Id.* at PageID# 1215-19, 1230-31);
> (5) Violation of privacy laws (*Id.* at PageID# 1220-21);
> (6) Non-selection for painter position due to discrimination based on sex and disability (*Id.* at PageID# 1147); and
> (7) Non-selection for painter position due to retaliation for filing an EEOC complaint (*Id.* at PageID# 1147, 1229).

The Secretary filed a Partial Motion to Dismiss on July 15, 2021.  (Doc. No. 34.)  The Secretary moved to dismiss all claims except Claim 6, non-selection for painter position due to gender and disability discrimination.[5]  (*Id.* at PageID# 1256.)

On November 17, 2021, the Court granted the Secretary's Partial Motion to Dismiss.  (Doc. No. 42.)  Thus, the only claim that remained following the Court's November 17, 2021 Order was Bryant's claim for non-selection for painter position due to sex and disability discrimination.  (*Id.*)

---

[5] Though Bryant alleged Claim 6 as non-selection "due to discrimination based on sex and disability," Claim 6 contains two separate discrimination claims: one for gender discrimination and one for disability discrimination.

On April 15, 2022, the Secretary filed the instant Motion for Summary Judgment on Bryant's final remaining claim.  (Doc. No. 45.)  Bryant filed an Opposition to the Secretary's Motion on May 11, 2022.  (Doc. No. 48.)  Bryant also appended four exhibits to her Opposition.  (*See* Doc. Nos. 48-1, 48-2, 48-3, and 48-4.)  The Secretary filed his Reply in Support of his Motion for Summary Judgment on May 25, 2022.  (Doc. No. 49.)  Also on May 25, 2022, the Secretary filed a Motion to Exclude Hearsay Documents from Plaintiff's Opposition, seeking to exclude certain Internet printouts that Bryant discussed in her Opposition.  (Doc. No. 50.)  Bryant did not file an Opposition to the Secretary's Motion to Exclude Hearsay Documents.

On April 22, 2022, Bryant filed a Motion for Reconsideration Based on New Evidence in which she asked the Court to reconsider its November 17, 2021 dismissal of her hostile work environment and harassment claim.  (Doc. No. 46.)  The Secretary filed his Opposition to Bryant's Motion for Reconsideration on May 6, 2022.  (Doc. No. 47.)  Bryant did not file a Reply in Support of her Motion for Reconsideration.

Thus, all three motions are now ripe and ready for a decision.

## II.     Motion for Reconsideration

Bryant asks this Court to reconsider its November 17, 2021 Order dismissing her hostile work environment and harassment claim.  Accordingly, the Court will consider whether it should grant Bryant's Motion to Reconsider before addressing the Secretary's Motion for Summary Judgment.

### A.     Standard of Review

A court may grant reconsideration if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice.  *See Brumley v. United Parcel Service, Inc.*, 909 F.3d 834, 841 (6th Cir. 2018); *Gencorp, Inc. v. Am. Int'l Underwriters*, 178

F.3d 804, 834 (6th Cir. 1999).  "It is not the function of a motion to reconsider either to renew

arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence

to support a prior argument when the legal theory or argument could, with due diligence, have been

discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross &*

*Blue Shield Mut. of Ohio*, 930 F.Supp. 1182, 1184 (N.D. Ohio 1996).[6]  *See also Brumley*, 909 F.3d

at 841.  Motions to alter or amend are extraordinary and should be sparingly granted.  *See Cequent*

*Trailer Products, Inc. v. Intradin (Shanghai) Machinery Co., Ltd*., 2007 WL 1362457 at *2 (N.D.

Ohio May 7, 2007); *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc*., 904 F.Supp. 644, 669 (N.D.

Ohio 1995).

## B.    Analysis

In her Motion, Bryant asks the Court to reconsider its decision dismissing Bryant's hostile

work environment and harassment claim "based on the New evidence, because the plaintiff believe

that the new evidence shed a better light on the serious effects that the ongoing harassment and hostile

work environment has had on her mental health."  (Doc. No. 46, PageID# 1558, reproduced as in

original.)  Therein, Bryant discusses at length her mental health diagnoses and struggles and argues

that she has suffered significant trauma and PTSD due to another coworker's presence at work.  (*Id.*

at PageID# 1559-60.)  Bryant attached five sets of documents to her Motion, which can be broken

down into the following categories: (1) medical records dated between 2021 and 2022, which indicate

various diagnoses, including Autism Spectrum Disorder, depression, anxiety, PTSD, and attention

---

[6] *See also Gascho v. Global Fitness Holdings, LLC*, 918 F.Supp.2d 708, 715 (S.D. Ohio Jan. 16, 2013) ("A motion for reconsideration or to alter or amend is not a vehicle to reargue the case or to present evidence which should have been raised in connection with an earlier motion."); 11 Charles Alan Wright, Arthur Miller and Mary Kay Kane, Federal Practice and Procedure, § 2810.1 (2d ed. 1995) (motions to alter or amend judgment cannot be used to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment.").

deficit hyperactivity disorder (Doc. Nos. 46-2, 46-4, 46-5, and 46-6); (2) medical records dated between 2016 and 2017 (Doc. No. 46-6); and (3) two denials of requested advanced sick leave sent from the VA's Employee Relations office to Bryant in 2021 and 2022 (Doc. No. 46-3).

In his Opposition, the Secretary argues that Bryant's supposed "new evidence" consists of documents that are either: (1) personnel records not related to the Final Agency decision at issue and therefore must be presented administratively to properly exhaust her remedies; (2) medical records created after the FAD at issue that do not address the Court's legal bases for dismissing Bryant's hostile work environment and harassment claim; or (3) are not "new" evidence at all, but are documents dating back to 2016-17 that could have been presented to the Court and also do not address the Court's bases for dismissal.  (Doc. No. 47, PageID# 1688.)

In its November 17, 2021 Memorandum Opinion and Order, the Court dismissed Bryant's hostile work environment and harassment claim for three reasons.  First, the Court concluded that issue preclusion "barred [Bryant] from relitigating her hostile work environment and harassment claims to the extent the claim stems from the EEOC claim Bryant filed against Deal."  (Doc. No. 42, PageID# 1320, citing *Bryant*, 2020 WL 364224, at *3.)  The Court noted that in paragraphs 179-200 of her Amended Complaint, Bryant alleged that she filed an EEOC complaint against Deal and Arthur and, as a result, they and other VA coworkers harassed Bryant and subjected her to a hostile work environment.  (*Id.*)  However, in a previous proceeding in this district before Judge Oliver ("*Bryant* I"), "Bryant alleged identical hostile work environment and harassment claims, which the court dismissed in their entirety."  (*Id.*)

Second, the Court concluded that, to the extent that Bryant alleged that she was subjected to a hostile work environment and harassment based on her disability because Arthur was transferred to

9

the third shift with Bryant, this claim failed because Bryant did not allege "conduct that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and [ ] create an abusive working environment.'"  (*Id.* at PageID# 1322.)  The Court reasoned that a single event, i.e., Arthur's transfer to third shift, was insufficient to state a claim for hostile work environment and harassment based on disability.  (*Id.*)

Third, to the extent that Bryant premised her hostile work environment and harassment claim on alleged harassment and bullying that took place between September 2019 and January 5, 2020, such a claim failed because it had not been administratively exhausted.  (*Id.* at PageID# 1321.)  The Court explained that it could not consider any alleged conduct that took place after February 8, 2019, the date upon which Bryant filed her EEO complaint, because such conduct was not properly administratively exhausted.  (*Id.*)

The Court finds no reason to reconsider its decision.  Bryant's new evidence does not relate to any of the three legal bases for dismissing her hostile work environment and harassment claim set forth in the Court's November 17, 2021 decision.  Bryant does not argue that these documents indicate that the Court incorrectly concluded that her claims were either barred by issue preclusion, failure to exhaust, or failure to plead a sufficient hostile work environment claim.  Rather, Bryant's arguments and the bulk of her attached documents focus on the alleged impact of the harassment and hostile work environment on her mental health in 2021 and 2022.  These documents do not make it any more likely that the Court's reasoning in the November 17, 2021 Order was wrong.  Further, Bryant's medical records dated October 4, 2016, July 5, 2017, and September 19, 2019 are not "new" evidence. (*See* Doc. No. 46-6, PageID# 1674-75, 1679-80.)  Finally, to the extent Bryant asks this Court to consider documents related to two instances in which the VA denied Bryant requested advance

10

medical leave, the Court declines to do so.  (*See* Doc. No. 46-3.)  None of the claims in this case—either dismissed or remaining—relate to any alleged discrimination or retaliation based on any VA decision to deny Bryant medical leave.  There is also no indication that Bryant administratively exhausted any claim related to any denial of medical leave or that Bryant amended any of her EEOC complaints to include a claim for denial of medical leave.  Therefore, the documents related to the VA's denial of Bryant's medical leave are irrelevant.

Accordingly, the Court denies Bryant's Motion to Reconsider its November 17, 2021 dismissal of her hostile work environment and harassment claim.

## III.    Motion to Exclude Hearsay Documents

Before the Court considers the Secretary's Motion for Summary Judgment, the Court will address the Secretary's Motion to Exclude Hearsay Documents from Plaintiff's Opposition Brief to Summary Judgment.  (Doc. No. 50.)  Therein, the Secretary asks the Court to exclude several internet printouts about painting techniques, attention deficit hyperactivity disorder, autism spectrum disorders, and women in skilled trades facing discrimination that Bryant either appended to or quoted at length in her Opposition as inadmissible hearsay.  (*Id.* at PageID# 1889; *see* Doc. No. 48, PageID# 1700-05; Doc. No. 48-2, PageID# 1803-06, 1809, 1812-25; Doc. Nos. 48-3, 48-4, 48-5.)  Bryant relies on these printouts to demonstrate that she was discriminated against during her 2018 interview for the painter position and to further prove that, indeed, her answers to certain technical knowledge interview questions were correct.  (Doc. No. 48, PageID# 1700-05.)  Bryant does not include any sworn affidavit or declaration to authenticate these printouts.  Further, most printouts do not identify the author or provide any context for the substance therein.  Bryant did not file any opposition to the Secretary's Motion to Exclude.

11

Fed. R. Evid. 801(c) defines "hearsay" as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in that statement."  Fed. R. Evid. 802 deems hearsay inadmissible unless an exception provided in a federal statute, the Rules of Evidence, or other rules prescribed by the Supreme Court applies.

According to the Sixth Circuit,

Although a district court may consider some forms of hearsay evidence in deciding a motion for summary judgment, Fed.R.Civ.P. 56(c), such evidence must still be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). An affidavit used to support or oppose a motion for summary judgment "is required to be sworn to by the affiant in front of an 'officer authorized to administer oaths,'" *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002) (quoting Black's Law Dictionary 54 (5th ed. 1979)), and must be made on the affiant's personal knowledge. Fed. R. Civ. P. 56(c)(4). Alternatively, under 28 U.S.C. § 1746, declarations may take the place of affidavits, so long as those declarations are made under penalty of perjury, certified as true and correct, dated, and signed. *See Pollock v. Pollock*, 154 F.3d 601, 612 n.20 (6th Cir. 1998); *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994). Statements that are not sworn in one of these two ways are not competent summary judgment evidence. *See Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment.") (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991)).

*Worthy v. Mich. Bell. Tele. Co.*, 472 Fed. App'x 342, 343-44 (6th Cir. 2012).

The Court concludes that Bryant's internet printouts do not satisfy either Rule 56 or 28 U.S.C. § 1746 and therefore are inadmissible hearsay statements under Fed. R. Evid. 801 and 802.  Bryant attempts to rely on her printouts on painting techniques, autism spectrum communication issues, attention deficit hyperactivity disorder, the impacts of learning disabilities on working memory, and challenges facing women in skilled trades, to support her claims that she was discriminated against based on her gender and disability status during the 2018 selection process for the painter position. (Doc. No. 48, PageID# 1700-05.)  Bryant's printouts are unsworn and do not provide the names of

the authors or offer any context for these out-of-court statements.  Because these printouts are unsworn, they are not competent summary judgment evidence and the Court will not consider them in ruling on the Secretary's Motion for Summary Judgment.  *Worthy*, 472 Fed. App'x at 344 (citing *Harris*, 627 F.3d at 239 n. 1); *see also, e.g., Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006) (concluding that it was improper for a district court to rely on a report because it was "unsworn and thus is hearsay, which may not be considered on a motion for summary judgment); *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 619-20 (6th Cir. 2003).

Accordingly, the Secretary's Motion to Exclude Hearsay Documents is granted.

## IV.    Motion for Summary Judgment

### A.    Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).  "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law."  *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party."  *Pittman v. Experian Info. Solutions, Inc.,* 901 F.3d 619, 628 (6th Cir. 2018).  In addition, "the moving party bears the initial burden of showing that there

13

is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 Fed. Appx 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 Fed. Appx 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 Fed. Appx at 508-09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox,* 53 F.3d at 150).

### B. Analysis

In Claim 6, Bryant alleges that she was not selected for the open painter position due to gender discrimination and disability discrimination. Though Bryant pleaded Claim 6 as a single "claim," the Court construes Claim 6 to set out two separate discrimination claims: first, gender discrimination in contravention of Title VII, 42 U.S.C. § 2000e, *et seq.*, and second, disability discrimination in contravention of the Rehabilitation Act, 29 U.S.C. §§ 701-709(b). *See supra*, n.5.

#### 1. Gender Discrimination Claim

The Secretary argues that he is entitled to summary judgment on Bryant's gender discrimination claim. First, the Secretary argues that Bryant cannot demonstrate a prima facie case

14

of gender discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* because she cannot point to evidence that she and the Selected Candidate were similarly situated.  (*Id.* at PageID# 1483.)  The Secretary argues that it is undisputed that the Selected Candidate had more technical knowledge than Bryant about commercial painting and, therefore, they were not similarly situated.  (*Id.* at PageID# 1484.)  The Secretary further argues that, assuming arguendo, Bryant could establish a prima facie case for gender discrimination, her claim nevertheless fails because she cannot show that the VA's legitimate, non-discriminatory reason for hiring the Selected Candidate instead of Bryant was pretext for gender discrimination.  (*Id.* at PageID# 1488.)

In her Opposition[7], Bryant argues the Selected Candidate's superior answers to the interviewers' technical knowledge questions do not demonstrate that the candidate has superior knowledge of commercial painting compared to Bryant, only that he knew the answers to the technical knowledge test.  (Doc. No. 48, PageID# 1694.)  Bryant also claims that all paint department applicants hired prior to and after this 2018 paint position were required to participate in a practical paint test, but that the Selected Candidate was not required to take a paint test to prove that he knew how to paint.  (*Id.* at PageID# 1714.)  Bryant also asks the Court to launch an investigation into the Engineering Department's hiring practices, which Bryant contends will demonstrate a pattern of "favoritism towards males."  (*Id.* at PageID# 1715, 1725-27.)

Under Title VII, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may rely on either direct or circumstantial evidence

---

[7] On June 27, 2022, well after briefing closed and without seeking leave of the Court, Bryant filed "Exhibits in supplement of Complaint."  The Court will not consider these in deciding the Secretary's Motion for Summary Judgment.

to establish that an employer engaged in discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003).

In the absence of direct evidence, the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *Kroger*, 319 F.3d at 865-66. "In order to establish a prima facie case of sex discrimination under Title VII, a plaintiff must show (1) that [s]he is a member of a protected class, (2) that [s]he was subject to an adverse employment decision, (3) that [s]he was qualified for the position, and (4) that [s]he was treated differently than a similarly situated individual outside the protected class." *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006) (citing *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004)). "The establishment of a prima facie case creates a rebuttable presumption of discrimination and requires the defendant to 'articulate some legitimate, nondiscriminatory reason' for taking the challenged action." *Kroger*, 319 F.3d at 866 (quoting *Univ. of Cincinnati*, 215 F.3d at 573). Finally, "[i]f the defendant is able to satisfy this burden, the plaintiff must then 'prove that the proffered reason was actually a pretext to hide unlawful discrimination.'" *Id.*

The Secretary argues that Bryant cannot meet the fourth element of a prima facie case, namely that she was rejected in favor of a similarly situated, non-protected applicant.[8]  (Doc. No. 45-1, PageID# 1483.)  To establish that an applicant is similarly situated, a plaintiff must show that the applicant is similar to her in "all relevant respects" but "need not demonstrate an exact correlation." *McKinnon v. L-3 Commc'ns Corp.*, 814 F. App'x 35, 48 (6th Cir. 2020) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)). "Courts . . . should make an

---

[8] The Secretary thus concedes that Bryant has satisfied the first three elements of her prima facie case, namely that she is a member of a protected class, that she was subject to an adverse employment action, and that she was qualified for the position.

independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected [successful applicant]."  *Ercegovich*, 154 F.3d at 352.

The Sixth Circuit has held in certain unpublished opinions that applicants who are substantially more experienced are not "similarly situated" for the purposes of establishing a prima facie case.  *See, e.g., Young v. Oakland Cnty.*, 176 Fed. App'x 644, 649-50 (6th Cir. 2006); *Nickell v. Memphis Light, Gas & Water Div.*, 16 Fed. App'x 401, 403 (6th Cir. 2001).  For example, in *Young v. Oakland Cnty.*, the Sixth Circuit affirmed the district court's conclusion that the plaintiff, who applied to be the county's chief corrections field operation manager, failed to establish that he was similarly situated to the Selected Candidate because the plaintiff had no criminal justice experience while the Selected Candidate had worked as a police sergeant for 27 years.  *Young*, 176 Fed. App'x at 649-50.  The court reasoned that "the value of a criminal justice background in relation to the position at issue is self-evident" and concluded that the district court properly determined the plaintiff was not similarly situated to the Selected Candidate.  *Id.* at 650.  In support of its conclusion that the plaintiff failed to establish his **prima facie** case, the *Young* court relied on discussions of applicant qualifications from two other Sixth Circuit cases, *Browning v. Dep't of Army*, 436 F.3d 692 (6th Cir. 2006), and *Wrenn v. Gould*, 808 F.2d 493 (6th Cir. 1987).  *Id.*  Curiously, however, the *Browning* and *Wrenn* excerpts that the *Young* court relied upon are excerpted from those opinions' discussions about whether the respective plaintiffs demonstrated **pretext** in the context of their failure-to-hire claims.  *Id.* (citing *Browning*, 436 F.3d at 696-97 (" . . . this court has held that employers are *not* rigidly bound by the language in a job description"); *Wrenn*, 808 F.2d at 502 ("It may be worthwhile to note here that Title VII does not diminish lawful traditional management prerogatives in choosing among qualified candidates . . . .")).

On the other hand, in *McDaniels v. Plymouth-Canton Comm. Schools*, the Eastern District of Michigan concluded that the plaintiff established her prima facie case of sex discrimination, despite the plaintiff's admission that she had less technical knowledge about the maintenance positions for which she was not selected than the Selected Candidates. *McDaniels v. Plymouth-Canton Comm. Schools*, No. 15-13136, 2017 WL 4682293, at *7 (E.D. Mich. Oct. 18, 2017). The *McDaniels* court reasoned that there was no dispute that McDaniels was qualified for the position, and that she and the other male applicants had mostly similar qualifications. *Id.* The court concluded that the defendant's argument that the Selected Candidates "had qualifications that made them more suitable candidates . . . play[ed] into whether PCCS's decision was a pretext for gender discrimination." *Id.*

The Court concludes that Bryant was similarly situated to the Selected Candidate in this case and, therefore, establishes her prima facie case. While the Selected Candidate's overall technical knowledge was greater than that of Bryant's, it is not as "readily apparent from the record" that the Selected Candidate's technical knowledge was vastly superior to Bryant's, when compared to the vast differences in experience described in *Young*. *Young*, 176 Fed. App'x at 650 (selected candidate for senior criminal justice role had 27 years of criminal justice experience, while the plaintiff had no criminal justice experience at all). Moreover, Bryant's qualifications included some residential painting experience and limited commercial painting experience (albeit in a law office, rather than medical, setting). True, Bryant could not explain how to wood grain a metal door or what VOCs were, while the Selected Candidate successfully answered both questions. (*See* Doc. No. 45-2, PageID# 1501, 1504.) However, according to Oden's scoresheet, Bryant received five points for her answer about the three abilities of primer, while the Selected Candidate only received three. (*Id.*) The Court concludes the instant case is more akin to the dispute described in *McDaniels*, in which

18

the candidates had somewhat similar qualifications but different levels of technical knowledge, than *Young*, where one candidate had nearly three decades of experience and the other had none. *Compare McDaniels*, 2017 WL 4682293, at *7 *to Young*, 176 Fed. App'x at 650. The differences between Bryant's and the Selected Candidate's technical knowledge play into whether the Secretary's decision was a pretext for gender discrimination.[9] *McDaniels*, 2017 WL 4682293, at *7

Next, the Secretary must "articulate some legitimate, nondiscriminatory reason for [Bryant's] rejection." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 578 (1978). Here, the Secretary asserts the interviewers, Oden and Tiedt, selected the candidate with the most experience in commercial painting and who was able to answer the technical knowledge questions during the interview. (Doc. No. 45-1, PageID# 1488.)  These reasons are non-discriminatory. Thus, the Secretary has met his burden.

Where the employer provides a legitimate nondiscriminatory reason for the adverse employment action, the plaintiff must then produce sufficient evidence from which a jury could reasonably reject the employer's explanation. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citations omitted). A plaintiff can show pretext in three interrelated ways, by demonstrating that an employer's proffered reason: (1) has no basis in fact; (2) did not actually motivate the employer's actions; or (3) was insufficient to motivate the employer's actions. *Miles v. South Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020).

According to the Sixth Circuit, courts should avoid questioning an employer's business judgment when determining pretext because the law does not require employers to make perfect

---

[9] Additionally, the *Young* court's reliance on *Brown* and *Wrenn*, both of which discuss the employer's prerogative to hire the most qualified candidate in the context of the *pretext* analysis, suggest that this question is best reserved for the Court's analysis about whether the Secretary's proffered reasons for hiring the Selected Candidate over Bryant were pretextual.

decisions, only to avoid making discriminatory ones.  *McDaniels*, 2017 WL 4682293, at *8 (citing *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996)).  As to an employer's business judgment in the context of hiring decisions, "[s]o long as its reasons are not discriminatory, an employer is free to choose among qualified candidates."  *Wrenn*, 808 F.2d at 502.  "Title VII does not diminish lawful traditional management prerogatives in choosing among qualified candidates . . . ."  *Id.*  (citing *United Steelworkers of America v. Weber*, 443 U.S. 193, 207 (1979)).

The Court concludes that Bryant fails to establish that the Secretary's proffered reasons for hiring the Selected Candidate over Bryant were pretext for sex discrimination.  Bryant offers no evidence, but only argues without citation that it was unfair for the VA to select a candidate based on his superior interview performance.  (Doc. No. 48, PageID# 1723.)  This argument is meritless.  The Secretary's evidence demonstrates that the Selected Candidate had more technical knowledge and more commercial painting experience than Bryant.  (*See* Doc. No. 45-2.)  According to Oden, the Paint Shop sought a candidate who had significant commercial painting experience and would require minimal supervision.  (Doc. No. 45-2, ¶ 2.)  Ultimately, the Selected Candidate scored significantly higher than Bryant after the final interview scores were tallied: the Selected Candidate scored 77, while Bryant scored a 55, the lowest of all the finalists.  (*Id.* at PageID# 1495.)  The Selected Candidate also earned more points overall on the technical questions than Bryant, and was able to provide at least satisfactory, if not excellent, answers to all of the technical knowledge questions while Bryant was unable answer several of the technical knowledge questions.  (*Id.* at PageID# 1503-04.)  Further, Bryant conceded in her deposition that the Selected Candidate had more technical knowledge about commercial painting than she did.  (Doc. No. 45-4, PageID# 1534.)  She also admitted that she would need training and would have to ask other people in the Paint Shop about

20

how to perform various commercial painting tasks within the hospital.  (*Id.* at PageID# 1534-35.)
Though Bryant appended photos of her painting to her Opposition to establish that she had painting
experience, those photos are in a residential, rather than commercial, setting.  (*See, e.g.,* Doc. No. 48-
2, PageID# 1796.)  She also admitted that she had limited commercial painting experience, and it was
only in the context of painting law offices, not in a medical or hospital setting.  (Doc. No. 45-5,
PageID# 1540.)  It was not discriminatory for the VA to hire the candidate who demonstrated superior
technical knowledge and lengthy commercial painting experience over a candidate who demonstrated
little technical knowledge and had almost no commercial painting experience.

Bryant also fails to present any evidence to suggest that her gender influenced her score, or
that the interview process was biased against women in any way.[10]  Moreover, her assertion that the
VA always conducted practical painting tests before hiring Paint Shop employees *except* for this
position, so as to avoid hiring her, is entirely unsupported in the record and meritless.  (Doc. No. 48,
PageID# 1724.)  This court cannot act as a "super personnel department" for the VA and "second
guess" why the VA, after conducting multiple interviews, would select the candidate who performed
the best during the interview process.  *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627-28 (6th Cir.
2006).  Indeed, it makes sense that the VA would select the candidate with the most commercial
painting experience and who demonstrated superior technical knowledge during his interview.  The
VA need not conduct a "practical" painting test in addition to its interviews to determine who the
most qualified candidate is, even if Bryant would prefer the VA do so.  (Doc. No. 48, PageID# 1724.)
Accordingly, the Court concludes that Bryant fails to establish a genuine issue of material fact over

---

[10] To the extent Bryant asks this Court to "examine [the] hiring practices" of the VA's Engineering Department, such a
request is clearly beyond the scope of the Court's authority.  Further, Bryant had the opportunity during discovery to seek
documents and take depositions to obtain potentially relevant information about the VA's hiring practices.  The Court
will not conduct Bryant's discovery for her.

whether the VA's hiring of the Selected Candidate amounted to pretext for gender discrimination. The Secretary is entitled to summary judgment with respect to Bryant's gender discrimination claim.

### 2. Disability Discrimination Claim

The Secretary also argues that he is entitled to summary judgment on Bryant's claim that she was not selected for the 2018 painter position due to disability discrimination in violation of the Rehabilitation Act of 1973. (Doc. No. 45-1, PageID# 1488-89.) The Secretary argues that Bryant cannot establish a claim of disability discrimination under the Rehabilitation Act because she cannot demonstrate that she was not selected for the painter position *solely* by reason of her disability, pursuant to § 504 of the Rehabilitation Act. (*Id.* at PageID# 1489.) The Secretary argues that the VA specifically invited candidates with disabilities to apply for the painter position, that the Selected Candidate also had a recognized disability, and that Bryant admitted that she had no evidence that the VA discriminated against her based on her disability. (*Id.*)

In her Opposition, Bryant argues that her disabilities, including autism, ADHD, and learning disabilities made it difficult for her to succeed during the interview. (Doc. No. 48, PageID# 1696-97.) Bryant acknowledges that the Selected Candidate knew all of the answers to the technical knowledge questions during the interview but argues that superior answers in an interview are not necessarily indicative of a candidate's actual capabilities. (*Id.* at PageID# 1694-95.) Bryant questions why the VA would hire an individual based on "their interviewing skills" rather than their credentials or skills in a trade. (*Id.* at PageID# 1723.)

Because Bryant is a federal employee, her disability claim is governed by the Rehabilitation Act, 29 U.S.C. § 791, *et seq.*, which "provides the remedy for federal employees alleging disability discrimination." *Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004).

22

On July 27, 2022, after briefing closed on this case, the Sixth Circuit issued its decision in *Bledsoe v. Tennessee Valley Auth. Bd. Dir.*, 42 F.4th 568, 579 (6th Cir. 2022). Therein, the Sixth Circuit clarified the applicable causation standard for claims brought by federal employees under § 501 of the Rehabilitation Act (codified at 29 U.S.C. § 791). Bryant fails to indicate whether she brings her claim under §§ 501 or 504 of the Act. Further, the Secretary did not address this distinction as *Bledsoe* was issued after the Secretary filed his Motion and Reply. Therefore, the Court believes a brief discussion of *Bledsoe* and the different causation standards under §§ 501 and 504 is warranted.

Section 504 of the Act provides that "[n]o otherwise qualified individual with a disability . . . shall, **solely by reason** of her . . . disability, . . . be subjected to discrimination . . . under any program or activity conducted by any Executive agency . . . ." 29 U.S.C. § 794(a) (emphasis added). Section 504's sole-cause standard is, as the Secretary argues in his Motion, "a stricter causation standard than ADA claims," which apply a but-for causation standard. (Doc. No. 45-1, PageID# 1489.)

However, § 501 of the Act also provides federal employees with a private right of action to bring disability discrimination claims against the federal government.[11] 29 U.S.C. § 794a; *see also Bledsoe*, 42 F.4th at 579. Section 501(f) provides:

> The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied *under title I of the Americans with Disabilities Act of 1990* (42 U.S.C. 12111 et seq.) and *the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990* (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment.

29 U.S.C. § 791(f) (emphasis added). *Bledsoe* addressed for the first time in the Sixth Circuit whether § 504's more stringent sole-cause standard applied to § 501 claims. *Id.* The Sixth Circuit concluded

---

[11] The *Bledsoe* court provides a more detailed background on the structure and history of the Rehabilitation Act, including about how it came to be that the Act created some overlap between private causes of action for federal employees under §§ 501 and 504. *See Bledsoe*, 42 F.4th at 579.

23

that § 501 claims were not subject to § 504's "sole cause" standard.  *Id.* at 580.  Instead, the court held, as a matter of first impression, that a federal employee proceeding under § 501 need not show her disability was the sole cause for the discrimination but need only "show that discrimination was a 'but-for' cause of the adverse employment action."  *Id.*  In other words, a federal employee-plaintiff with a § 501 claim must satisfy the ADA's but-for causation standard.  *Id.*  Out of an abundance of caution, the Court construes Bryant's disability discrimination claim as arising under § 501 because Bryant is a federal employee and because the Court assumes Bryant would want to proceed under the less stringent causation standard.

Even applying § 501's but-for causation standard, the Court concludes that Bryant's disability discrimination claim fails as a matter of law because Bryant fails to come forward with *any* evidence of disability discrimination.  Indeed, Bryant admitted at her deposition that she had no evidence to support her disability discrimination claim:

> Q: So what evidence then do you have, apart from your speculation, that they discriminated against you based on your disability?
>
> A: **I don't have any evidence of that.**  I'm just saying.  I think that—I think the—I think that's what I said about the VA.  I think this is retaliation.

(Doc. No. 45-5, PageID# 1541, emphasis added.)  Bryant's deposition testimony not only indicates that she lacks any evidence to support her non-selection due to disability discrimination claim, but also that her theory of the case is that her non-selection was due to retaliation and other factors, not disability discrimination.[12]

Further, the Secretary has come forward with evidence that the VA intended to hire—and ultimately hired—a candidate with a Schedule A disability for the painter position.  According to

---

[12] The Court previously dismissed Bryant's claim for non-selection due to retaliation in its November 17, 2021 Memorandum Opinion and Order.  (Doc. No. 42, PageID# 1327.)

Oden, the job posting "specifically invited candidates with disabilities under Schedule A to apply." (Doc. No. 45-2, ¶ 2.)  Moreover, there is evidence that Bryant received at least one bonus "preference" point on her application *because* she has a Schedule A disability.  (Doc. No. 45-4, PageID# 1529-30.)  In other words, Bryant received a small boost on her application because she was disabled.  Bryant also admitted that neither interviewer asked her if she was disabled during her interview, but that she voluntarily began her interview by telling them that she was disabled.  (*Id.* at PageID# 1531-32.)  Finally, like Bryant, the Selected Candidate also has a recognized Schedule A disability.  (Doc. No. 45-2, ¶ 7.)  Thus, the evidence adduced does not demonstrate that the Secretary refused to hire Bryant because of her disability, but actually demonstrates that Bryant received more favorable treatment through receiving an extra point preference *because* she was disabled.

Bryant argues that she has several other disabilities, in addition to her Schedule A-recognized disability of dyslexia, and that these disabilities made it difficult for her to provide adequate interview answers.  (Doc. No. 48, PageID# 1725.)  However, Bryant provides no evidence that she was either recognized as having these other disabilities at the time of her interview, or that she requested any accommodation as part of the interview process to mitigate for any challenges she may have experienced during her interview due to her disability.  Further, while Bryant suggests that the VA should provide more mentoring and on-the-job training for disabled employees, such suggestions are not evidence of discrimination against Bryant.  (Doc. No. 48, PageID# 1697.)  Accordingly, the Court concludes that the Secretary is entitled to summary judgment with respect to Bryant's disability discrimination claim.

## V.      Conclusion

For all the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. No. 45) is GRANTED.   Plaintiff's Motion for Reconsideration (Doc. No. 46) is DENIED.   Defendant's Motion to Exclude Hearsay Documents (Doc. No. 50) is GRANTED.

**IT IS SO ORDERED.**


                                                    *s/Pamela A. Barker*
                                                    PAMELA A. BARKER
Date: August 30, 2022                                U. S. DISTRICT JUDGE